1  **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Harold Newton,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-17-08247-PCT-DGC<br><br>**ORDER** |

Plaintiff Harold Newton seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security, which denied him disability insurance benefits and supplemental security income under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. The Court finds that the administrative law judge's ("ALJ") decision is based on reversible legal error, and will remand for further proceedings.

**I. Background.**

Plaintiff is a 48 year old male who previously worked as an industrial cleaner, construction apprentice, warehouse worker, and grounds keeper. A.R. 33-34. Plaintiff applied for disability insurance benefits and supplemental security income in September and October 2013, alleging disability beginning on January 30, 2013. A.R. 20. On February 23, 2016, Plaintiff testified at a hearing before an ALJ. *Id.* A vocational expert also testified. *Id.* On September 20, 2016, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 20-36. This became the

1 | Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on September 26, 2017. A.R. 1-5.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* "The burden is on the party claiming error to demonstrate not only the error, but also that it affected [her] substantial rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012).

## III. The ALJ's Five-Step Evaluation Process.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) he is not currently working, (2) he has a severe impairment, and (3) this impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") prevents his performance of any past relevant work.

If the claimant meets his burden through step three, the Commissioner must find him disabled. If the inquiry proceeds to step four and the claimant shows that he is incapable of performing past relevant work, the Commissioner must show at step five that the claimant is capable of other work suitable for his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, and had not engaged in substantial gainful activity since January 30, 2013. A.R. 22. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, type-two diabetes mellitus, and obesity. A.R. 23. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment. A.R. 25. At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work with some additional limitations, but that Plaintiff was unable to perform his past relevant work as an industrial cleaner, construction apprentice, warehouse worker, or grounds keeper. A.R. 26, 33-34. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, he was able to perform the requirements of occupations like call-out operator, document preparer, and addressing clerk. A.R. 34-35.

**IV. Analysis.**

Plaintiff makes three arguments: (1) the ALJ erroneously weighed the medical opinion evidence, (2) the ALJ erroneously relied on vocational expert testimony that conflicted with the Dictionary of Occupational Titles, and (3) the ALJ erroneously discredited Plaintiff's symptom testimony. Doc. 12 at 11-25.

**A. Medical Opinion Evidence.**

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But the Commissioner generally must defer to a physician's medical opinion, such as statements

concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(1), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. *Lester*, 81 F.3d at 830. Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted), or if there are significant discrepancies between the physician's opinion and her clinical records, *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quotation marks and citation omitted). Under either standard, "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the

doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quotation marks and citation omitted).

### 1. Dr. Ohman.

Dr. Valerie Ohman is a treating physician who offered multiple opinions regarding Plaintiff's ability to work. A.R. 30-32. Plaintiff challenges only the ALJ's rejection of her July 2013 opinion that Plaintiff "was unable to do [desk work] because he was unable to stand or sit for greater than 15 minutes." A.R. 31. Because this opinion is inconsistent with those of multiple other physicians (A.R. 31-32), it can be rejected for "specific and legitimate reasons supported by substantial evidence in the record," *Lester*, 81 F.3d at 830-31.

The ALJ discredited Dr. Ohman's opinion for three reasons. The ALJ first noted that "treatment records from July and August 2013[] only noted numbness in [Plaintiff's] feet due to back pain, but no other objective evidence to support these restrictions." A.R. 31. "Objective medical evidence is medical signs, laboratory findings, or both[.]" 20 C.F.R. § 404.1513(a)(1). Plaintiff contends that the ALJ ignored Plaintiff's report of right leg weakness to a physician in July 2013 and the fact that Dr. Ohman had a long treating relationship. Doc. 12 at 12. But a subjective report of weakness and long treatment history do not amount to medical signs or laboratory findings. Plaintiff also notes that "the doctor's file contains numerous records that document [Plaintiff] was suffering from lumbar radiculopathy." *Id.* But this conclusory assertion, made without citations to the record, is insufficient to establish error. Plaintiff finally notes that Dr. Ohman's opinion is consistent with Plaintiff's use of opioid medication. *Id.* Defendant contends that medication prescriptions do not amount to objective evidence (Doc. 17 at 4), and the Court agrees. Opioid prescriptions are not medical signs or laboratory findings. *See* 20 C.F.R. § 404.1513(a)(1). These medications reflect a method of treatment that certainly supports Plaintiff's allegations of pain, but they are not objective test results that support Dr. Ohman's opined limitations. Plaintiff's citation to Social Security regulations is unavailing. Doc. 18 at 4 (quoting 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3) (describing how the Commissioner, not a physician, evaluates a claimant's symptoms)). The Court accordingly finds that this is a specific and legitimate reason to undermine Dr. Ohman's opinion.

The ALJ next noted in a single sentence that Dr. Ohman's opinion "is inconsistent with the opinion that was rendered just three days prior." A.R. 31. That opinion, rendered by Physician's Assistant ("P.A.") Sandra Murphy, concludes that Plaintiff required significant work restrictions, but was capable of sedentary desk work. A.R. 418. The ALJ's one-sentence citation to a conflicting opinion from a different medical source is insufficient to undermine Dr. Ohman's opinion. The ALJ provides no explanation of why the opinion from P.A. Murphy undermines Dr. Ohman's opined limitations.

The ALJ finally reasoned, in another single sentence, that Plaintiff "testified that he worked a[s] a janitor, with significant walking and lifting, which was demonstrative of his physical capacity." A.R. 31. Again, the ALJ does not explain how this testimony undermines Dr. Ohman's opined limitations. Nor does it acknowledge that Plaintiff's work was only part-time from February to July 2013 and that Plaintiff quit when he could no longer perform the physical requirements of the job. *See* A.R. 58-59.[1]

Even if the ALJ committed error in improperly weighing a medical opinion, that error will be harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error." *Molina*, 674 F.3d at 1115; *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). Two of the ALJ's three reasons to discredit Dr. Ohman's opinion fall well short of the "detailed and thorough" analysis the Ninth Circuit requires. *Revels*, 874 F.3d at 654. Although one reason is specific and legitimate, the Court cannot find that the ALJ would have reached the same conclusion had she properly evaluated Dr. Ohman's opinion. The ALJ's error was not harmless.

---

[1] Plaintiff also contends that the ALJ undermined Dr. Ohman's opinions by relying on her short-term work releases and the opinion of Dr. Trotter. Doc. 12 at 14, 17. These arguments mischaracterize the ALJ's decision. The ALJ separately considered these opinions without linking them to any of Dr. Ohman's opinions. A.R. 30-31.

### 2. Dr. Trotter.

Dr. David Trotter is a non-examining physician who opined in August 2013 that Plaintiff "had some restrictions and limitations, but was not precluded from full-time work place capacity." A.R. 31, 419. The ALJ gave this opinion great weight "because it [is] supported by a thorough medical evidence evaluation" and Plaintiff's "physical examinations support that he had normal strength, gait, and range of motion throughout the record." A.R. 31. Plaintiff contends that the ALJ erred by assigning great weight to the opinion of a non-examining physician. Doc. 12 at 14.

Plaintiff first contends that the ALJ assigned great weight to Dr. Trotter's opinion based on a mistaken belief that he performed a physical examination of Plaintiff. Doc. 12 at 14. The ALJ did misclassify Dr. Trotter as an examining physician, but she did not rely on any examination he allegedly performed. A.R. 31. The ALJ instead emphasized that Dr. Trotter's opinion is "supported by a thorough medical evidence evaluation" and physical examinations performed by other physicians. A.R. 31. Because the ALJ did not rely on this mistaken classification to assign great weight to Dr. Trotter, the Court does not find error.

Plaintiff next contends that the ALJ should have "articulate[d] her reasons for giving greater weight to a nonexamining physician's opinion than a treating or examining physician's opinion." Doc. 12 at 15-16 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-01 (9th Cir. 1999)). But *Morgan* imposes no such requirement. 169 F.3d at 600-01 (describing standards for *rejecting* medical opinions). Plaintiff contends that Dr. Ohman was better positioned to render an accurate opinion (Doc. 12 at 16), but does not argue that the ALJ's decision to assign weight to Dr. Trotter's opinion lacks support in the record. The Court finds that the ALJ's decision was supported by substantial evidence (A.R. 31 (citing A.R. 438, 442, 451, 475, 663, 785)), and therefore finds no error.

### 3. Dr. Hales.

Dr. David Hales is an orthopedic physician who evaluated Plaintiff in 2013 and 2014 for possible back surgery. A.R. 607, 738-42. Plaintiff contends that the ALJ failed to address two of his opinions. Doc. 12 at 18-19. The Court finds no error.

Plaintiff first contends that the ALJ failed to address Dr. Hales' June 2013 opinion that Plaintiff could not work for one month and would be subject to functional limitations upon his return. Doc. 12 at 18-19 (citing A.R. 607). But the cited record describes the opinion of Dr. Ohman, not Dr. Hales. A.R. 606-07. Defendant identifies this issue (Doc. 17 at 5-6), and Plaintiff does not respond (Doc. 18 at 6).

Plaintiff next contends that the ALJ failed to address Dr. Hales' September 2014 opinion that Plaintiff "can only walk for 5-10 minutes or stand in one place before []he has to [lie] down because of the back pain." A.R. 738; *see* Doc. 12 at 18. But the quoted language is merely a recitation of Plaintiff's symptoms as he reported them. *See* A.R. 738. The relevant medical impression section from the same office visit offers no such opinion. A.R. 741. The Court therefore finds no error.

### 4. Dr. Patel.

Dr. Sanjay Patel is an examining physician who opined in May 2015 and January 2016 that Plaintiff had numerous physical limitations that restricted his ability to work. A.R. 32-33. Dr. Patel identified significant limitations with respect to Plaintiff's ability to sit, stand, walk, bend, squat, climb, concentrate, and operate in a stressful work environment. A.R. 32-33. Because this opinion is inconsistent with those of multiple other physicians (A.R. 31-32), it can be rejected for "specific and legitimate reasons supported by substantial evidence in the record," *Lester*, 81 F.3d at 830-31. The ALJ gave little weight to this opinion:

> In regard to the [RFC] provided by Dr. Patel, there is no evidence that [Plaintiff] is this limited. [Plaintiff's] physical examinations reflect tenderness and limited motion of the lumbar spine, but good overall mobility and use of the extremities. He has no neurological deficits.

A.R. 33 (internal citations omitted).

Plaintiff contends that this reasoning is insufficient (Doc. 12 at 19), and the Court agrees. Although the ALJ provided multiple record citations, she did not explain how the clinical findings in those records conflict with any of the specific limitations identified in Dr. Patel's opinion. The ALJ's explanation falls short of the "detailed and thorough" analysis the Ninth Circuit requires. *Revels*, 874 F.3d at 654. Because the ALJ offered this single reason to discredit Dr. Patel's opinion, the Court cannot conclude that this error was harmless.[2]

### 5. Dr. Mayer.

Dr. David Mayer is a treating primary-care physician who offered this brief opinion in April 2015:

> This patient is under my care for [diabetes], Hypertension, back pain, left shoulder tendinitis, [and] sleep disorder. He is awaiting back surgery. Currently [Plaintiff] is unable to do work of any kind including sedentary work. His pain and sedating medications are limiting his ability to do even sedentary work. It is hoped that surgery will reduce the need for the sedating medication and improve his function to the point that he can return to work in some capacity.

A.R. 730.

The ALJ assigned little weight to this opinion for two reasons (A.R. 32), and Plaintiff does not challenge them (Doc. 12 at 20). Plaintiff instead contends that the ALJ mistook Dr. Mayer's opinion "as suggesting the reason for [it] was solely because of [Plaintiff's] pain and the sedating effects of his medications." *Id.* Because Dr. Mayer was a treating physician with access to Plaintiff's entire medical history, Plaintiff argues, this opinion is rooted on a comprehensive consideration of his impairments. *Id.*

Granted, Dr. Mayer's opinion notes that Plaintiff has diabetes, hypertension, left shoulder tendinitis, sleep disorder, and a spinal condition that requires surgery. A.R. 730. But when offering his disability determination, Dr. Mayer states only that Plaintiff's

---

[2] Dr. Patel also opined that Plaintiff's "impairments 'may qualify' for listing 1.04 since 2013[.]" A.R. 32. The ALJ gave two reasons for assigning little weight to this opinion (A.R. 33), and Plaintiff does not challenge them (Doc. 12 at 19).

"pain and sedating medications are limiting his ability to do even sedentary work." A.R. 730. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954. Plaintiff may disagree with the ALJ's reading of Dr. Mayer's opinion, but the Court concludes the ALJ's interpretation of this somewhat vague opinion is reasonable. The Court cannot find error.

### 6. State Agency Reviewing Physicians.

Plaintiff argues that the ALJ "rejected the opinions of the treating physicians by giving great weight to the opinions of State Agency consultants who never examined [him]." Doc. 12 at 21. The ALJ addressed each medical opinion in the same section of her decision (A.R. 30-33), but Plaintiff does not cite any language from the decision to suggest that the ALJ actually relied on the non-examining physicians to reject the treating physician opinions (Doc. 12 at 21).

Dr. Bendheim is an examining physician who opined in February 2014 that Plaintiff "did not have impairments that would impose limitations [for a] continuous 12 months[.]" A.R. 31. Plaintiff contends that the "ALJ erred by failing to provide an adequate explanation for her reasons for giving greater weight to a non-treating physician . . . who only had limited records and saw [Plaintiff] early on after the onset of his disability[.]" Doc. 12 at 21. The ALJ offered reasoning (A.R. 31) that Plaintiff does not address (*see* Doc. 12 at 20-21). Nor does Plaintiff cite authority for the proposition that an ALJ commits error merely by crediting a physician's opinion. The Court finds no error.

## B. Vocational Expert Testimony.

Plaintiff contends that the ALJ erred by relying on vocational expert ("VE") testimony without first resolving a conflict between the testimony and the Dictionary of Occupational Titles ("DOT"). Doc. 12 at 21-22. The VE testified that a hypothetical individual with the RFC formulated by the ALJ could perform three specific occupations by freely alternating between standing and sitting. A.R. 87-88. But because the DOT

does not describe this sit/stand option for the three occupations, Plaintiff argues, the VE's testimony conflicted with the DOT. Doc. 12 at 21-22. Defendant concedes that the DOT is silent on whether such an accommodation can be made, but contends that silence cannot be the basis for a conflict. Doc. 17 at 9.

"If the expert's opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the [DOT], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Lamear v. Berryhill*, 865 F.3d 1201, 1205 (9th Cir. 2017) (brackets omitted). To trigger this obligation, "the conflict must be obvious or apparent." *Id.* (internal quotation marks omitted). "This means that the testimony must be at odds with the [DOT's] listing of job requirements that are essential, integral, or expected." *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016).

Cases within the Ninth Circuit conflict on whether the DOT's mere silence on sit/stand accommodations can create a conflict that meets the "obvious or apparent" standard. *See McDaniel v. Colvin*, No. 5:16-CV-00869, 2017 WL 1399629, at *4-5 (C.D. Cal. Apr. 18, 2017) (collecting cases). In unpublished decisions from 2011 and 2016, the Ninth Circuit assumed that this situation creates a conflict and held only that the ALJ adequately reconciled the discrepancy by discussing it with the VE on the record. *See Ruiz v. Colvin*, 638 F. App'x 604, 606-07 (9th Cir. 2016); *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628-29 (9th Cir. 2011). But in a more recent unpublished decision, the Ninth Circuit squarely addressed this issue:

> The hypothetical posed to the [VE] was complete and did not conflict with the [DOT]. A conflict must exist between the VE's testimony and the DOT in order to trigger the ALJ's responsibility to resolve the conflict. Here, the DOT is silent on whether the jobs in question allow for a sit/stand option. There is no conflict. The ALJ complied with the requirements of Social Security Ruling 83-12 in this case. Specifically, he properly consulted a VE, who indicated that there were jobs that Claimant could perform even though he required a sit/stand option and use of a cane to ambulate. The ALJ also confirmed that the VE's testimony did not deviate from the DOT. The ALJ did not err by relying upon the VE's testimony.

*Dewey v. Colvin*, 650 F. App'x 512, 514 (9th Cir. 2016) (internal citations omitted).

This case is similar to *Dewey*. The VE testified that Plaintiff could work as a call-out operator, document preparer, and addressing clerk with a sit/stand option. A.R. 87-88. The DOT is silent on whether such an accommodation is permissible for these occupations, but the VE confirmed that her testimony was consistent with the DOT. A.R. 88. The Court accordingly finds no "obvious or apparent" conflict.

### C. Plaintiff's Symptom Testimony.

In evaluating a claimant's symptom testimony, the ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Revels*, 874 F.3d at 655 (citing *Garrison*, 759 F.3d at 1014). The claimant is not required to show that her impairment could reasonably be expected to cause the severity of her alleged symptoms, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.*

The ALJ described Plaintiff's symptom testimony:

> The claimant testified at the hearing and alleged disability due to back pain, right leg pain, and diabetes. The claimant testified that he had a lumbar fusion surgery in 2002 and was able to return to work. He testified that he still experienced lower back pain and in January 2013, he twisted the wrong way and started experiencing low back and leg pain. The claimant testified that injections and physical therapy did not alleviate his symptoms. He testified that he was told that he needed back surgery, but he needed to bring blood sugar levels down prior to surgery.
>
> The claimant testified that he lives with his wife and 13-year-old son. He testified that he has to sit and rest after 15-20 minutes of walking. He also testified that he has problems sitting, he cannot sit normally in a chair, because [his] right leg goes numb, and his lower back and hips hurt. The claimant testified that he cannot lift a gallon of milk and can only carry light items like chips or bread. He reported problems with bending and daily back spasms. He testified that his pain medications provide some relief, but cause side effects of nausea and sleepiness. He testified that his pain medication reduces his pain level to 4/10.

A.R. 26-27.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent and credible. A.R. 27. The ALJ provided two reasons for this finding, and Plaintiff disputes both.

### 1. First Reason.

The ALJ reasoned that Plaintiff's "allegations are inconsistent with treatment notes that suggest that he is functional." A.R. 27. To support this conclusion, the ALJ described Plaintiff's medical records over four pages. A.R. 27-30. The ALJ did not link these medical records in any way to Plaintiff's alleged symptoms. A.R. 27-30. The ALJ then concluded: "while [Plaintiff] may experience some level of pain, the treatment evidence shows that he has responded such that any symptoms that he might experience would be accommodated were he to perform sedentary exertional work with the postural and environmental limitations noted above." A.R. 30.

Plaintiff contends that this reason is not sufficiently specific to justify an adverse credibility finding. Doc. 12 at 22-23. Defendant disagrees and offers its own interpretation of the medical evidence, but does not explain how the ALJ decision, as written, meets the specific, clear, and convincing standard. *See* Doc. 17 at 2-3. The Court agrees with Plaintiff. The Ninth Circuit has held "that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). *Brown-Hunter* considered an ALJ decision with similar reasoning:

> Our review of the ALJ's written decision reveals that she did not specifically identify any such inconsistencies; she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of "specific reasons" we must have in order to review the ALJ's

decision meaningfully, so that we may ensure that the claimant's testimony was not arbitrarily discredited.

*Id.* at 494. The ALJ committed the error identified in *Brown-Hunter*. A.R. 27-30. This was not a clear and convincing reason to reject Plaintiff's symptom testimony.

### 2. Second Reason.

An ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). But "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Thus, an ALJ may use a claimant's daily activities to discredit symptom testimony only if the activities contradict the claimed limitations, or the claimant "spend[s] a *substantial* part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (emphasis added).

The ALJ accorded "some weight" to a daily living questionnaire completed by Plaintiff's adolescent son. A.R. 33. That questionnaire describes Plaintiff's daily and weekly activities, including driving, cooking, cleaning, shopping, bill paying, and social interactions. A.R. 33. The ALJ concluded that the statements in the questionnaire are worthy of "some weight, as they show that [Plaintiff] is more functional than he alleges." A.R. 33. Plaintiff contends that this is insufficient to undermine his credibility (Doc. 12 at 24), and the Court agrees. The ALJ did not find that Plaintiff spent a substantial part of his day performing these activities. Nor did the ALJ explain why Plaintiff's activities were inconsistent with his claimed limitations. The Court therefore cannot conclude that this is a clear and convincing reason to reject Plaintiff's symptom testimony.

### 3. Whether Error was Harmless.

Because neither of the ALJ's reasons is clear and convincing, the ALJ erred in discrediting Plaintiff's testimony regarding the severity of his symptoms. *See Revels*, 874

F.3d at 655. Given that Plaintiff's testimony clearly conflicts with the physical RFC determination on which the ALJ based his ultimate finding of nondisability, the Court cannot deem this error harmless.

**V.     Scope of Remand.**

"When the ALJ denies benefits and the court finds error, the court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> The three-part analysis . . . is known as the "credit-as-true" rule. First, we ask whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, we determine whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, we then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

Although the ALJ erred in discounting Plaintiff's testimony and the medical opinions of Drs. Ohman and Patel, the record contains conflicting medical opinions of Drs. Trotter, Bendheim, Goodrich, and Combs, and P.A. Murphy. This state of the record creates doubt as to Plaintiff's disability, and further administrative proceedings to weigh these conflicting opinions would be useful. This case therefore does not present the rare circumstance in which an immediate award of benefits might be appropriate.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 10th day of August, 2018.

*David G. Campbell*
David G. Campbell
Senior United States District Judge